UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DONNA MCNEAL, § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:21-CV-1163 |
| § | |
| CITY OF KATY, ET AL., § | |
| *Defendants*. § | |

## MEMORANDUM AND ORDER

This civil rights case is before the Court on Defendants' Motions for Summary Judgment. ECF 15, 16. Plaintiff filed a consolidated Response.[1] ECF 23. Having considered the parties' submissions and the law, it is ORDERED that Defendants' Motions are GRANTED and this case is DISMISSED in its entirety with prejudice.

### I. Factual and Procedural Background

The following facts are undisputed unless otherwise noted and are supported by video footage from the body cameras of Officers Garcia and Domer. At around 7:00 p.m. on March 16, 2019, City of Katy police officers were called to the scene of a disturbance at a Mexican food restaurant. As he approached the restaurant, Garcia saw two cars matching the description given by the caller leaving and followed them to a residence. Domer followed Garcia. Upon arrival at the residence, Domer observed two men outside smoking. The men immediately began walking away and did not obey Domer's verbal commands to stop. Garcia and Domer detained the two men after a tense confrontation and at least one was charged with crimes unrelated to the dispute at the restaurant.

---

[1] Plaintiff's objections to Defendants' Affidavits as hearsay, not based on personal knowledge, and undisclosed expert testimony (ECF 24 at 6-7) are without merit and are overruled.

After detaining the men, the officers engaged with Plaintiff, Donna McNeal, who was standing between two parked cars. Garcia attempted to question Plaintiff about the incident at the restaurant. Plaintiff shouted and cursed at the officers, and after initially denying having anything to do with the incident at the restaurant, made other comments that confirmed she had been there. Offer Garcia repeatedly asked Plaintiff to calm down and stop yelling but she continued to yell "do not put your hands on me," and "I do not have to calm down." Garcia then grabbed Plaintiff's right arm. Plaintiff fell to the ground, hitting her head on a car bumper. Domer grabbed Plaintiff's arms and dragged Plaintiff a short distance to get her out from between two vehicles. He then cuffed Plaintiff's hands behind her back. Garcia later led Plaintiff to his patrol car and she got into the back seat. Plaintiff was asked if she needed medical treatment at the scene but she refused it. No other Officers were present or in the nearby vicinity at the time of Garcia and Domer detained Plaintiff. Garcia questioned Plaintiff and other women at the scene regarding events at the Mexican food restaurant. After about 23 minutes, Garcia released Plaintiff and no charges were brought against her.

Two years later, Plaintiff filed suit in state court in Fort Bend County, Texas against the City of Katy, Police Chief J. Noe Diaz, and Katy Police Officers Rucker, Garcia, Domer, Snowden, Reyna, Wiley, and Alvarez. ECF 1-1. Plaintiff's Original Complaint asserts claims under 42 U.S.C. § 1983 against all Defendants for excessive force in violation of Plaintiff's Fourth, Fourteenth, and Eighth Amendment rights. Defendants timely removed the action to federal court on April 9, 2021. All parties consented to jurisdiction of this Magistrate Judge for all purposes, including final judgment, and on September 13, 2021 the Court entered a Scheduling Order. ECF

12, 14. No further activity is reflected on the docket for this case until Defendants timely filed Motions for Summary Judgment on August 19, 2022.

## II.     Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted).

### III. Analysis

#### A. Eighth Amendment Claims

The Eighth Amendment prohibits cruel or unusual punishment of a person in custody after being convicted of a crime. *Lynch v. Cannatella*, 810 F.2d 1363, 1375 (5th Cir. 1987); *James v. Harris Cnty.*, No. CIV.A. H-04-3576, 2006 WL 2827050, at *4 (S.D. Tex. Sept. 28, 2006) (citing *Graham v. Connor*, 490 U.S. 386, 393 (1989)). Even if disputes exist about Plaintiff's treatment during the incident at issue, she does not allege and there is no evidence that she was charged and convicted of a crime. Therefore, Defendants' Motion for Summary Judgment based on alleged violations of the Eighth Amendment is granted.

#### B. Fourteenth Amendment Claims

The Fourteenth Amendment ensures a person's right to substantive due process. Plaintiff's claims for excessive force are properly analyzed under the Fourth Amendment's reasonable search and seizure standards, not under substantive due process. *Graham*, 490 U.S. at 395; *See also Albright v. Oliver*, 510 U.S. 266, 273 (1994) (holding that where a particular Amendment provides constitutional protection, that Amendment, "not the more generalized notion of 'substantive due process,' governs the claim (quoting *Graham*, 490 U.S. at 395))); *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010) (holding that claims based on alleged pretrial deprivations of constitutional rights such a prosecution without probable cause should be brought under the Fourth Amendment). Therefore, Defendants' Motion for Summary Judgment on all claims based on alleged violations of the Fourteenth Amendment is granted.

#### C. Claims Against Officers Rucker, Snowden, Reyna, Wiley, and Alvarez

The Original Petition alleges the above-named officers arrived on the scene and did not

4

prevent the unreasonable use of force by Garcia. ECF 1-1 at 9. The Fifth Circuit has held that to succeed on a bystander claim, a plaintiff must show that an officer (i) knew another officer was violating plaintiff's constitutional rights; (ii) was present at the time; (iii) had a reasonable opportunity to prevent the harm; and (iv) chose not to act. *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."). Defendants have presented summary judgment evidence showing that Garcia and Domer were the only officers at the scene near Plaintiff at the time she alleges the officers used excessive force to detain her. ECF 15-1 at 3; ECF 15-2 at 3; ECF 15-4 at 2; ECF 15-5 at 2; ECF 15-6 at 2; ECF 15-7 at 2; D. Exs. 1-B, 2-B (Body Camera Video). Plaintiff's Declaration submitted in opposition to summary judgment completely fails to mention Officers Rucker, Snowden, Reyna, Wiley, or Alvarez. ECF 24-1. Because the summary judgment record demonstrates that Officers Rucker, Snowden, Reyna, Wiley, or Alvarez were not present at the scene during the alleged excessive force, Defendants' Motion for Summary Judgment on Plaintiff's claims against these officers for bystander liability is granted.

### D. Claims Against Chief Diaz

No respondeat superior or vicarious liability exists under 42 U.S.C. § 1983. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006); *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). A supervisor may be held liable under § 1983 only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Portwood v. Nehls*, No. CV 4:19-4466, 2022 WL

4734386, at *4 (S.D. Tex. Sept. 30, 2022) (citing *Porter*, 659 F.3d at 446 and *Rios*, 444 F.3d at 425). Further, a failure to supervise or failure to train claim against a supervisor requires a showing of deliberate indifference. *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018).

Katy City Council appointed J. Noe Diaz as Chief of Police on March 11, 2019. ECF 16-3 at 3. Chief Diaz's first day on the job was March 18, 2019. *Id.*; ECF 16-3 at 36. The incident at issue in this case took place on March 16, 2109. *See, e.g.,* ECF 15-1 at 11; ECF 24-1 at 2. Therefore, Chief Diaz could not have been personally involved in the excessive force incident. Plaintiff has no evidence to support the spurious allegations in her Original Petition that Diaz "punched, beat, and allowed a private citizen to attack" Plaintiff. ECF 1-1 at 10. Moreover, Plaintiff's argument that Chief Diaz and Officer Rucker, who is Garcia's and Domer's supervisor, "ratified" Garcia's use of excessive force after the fact does not present a cognizable theory of liability under § 1983. *See Khansari v. City of Houston*, 14 F. Supp. 3d 842, 867 (S.D. Tex. 2014) (stating "this court is not aware of and plaintiffs have not cited any cases imposing personal liability on a supervisor based on ratification" and citing *Hobart v. City of Stafford*, 916 F.Supp.2d 783, 799 (S.D.Tex.2013) for the proposition that "post-incident ratification cannot impart liability on a supervisor"). For these reasons, Defendants' Motion for Summary Judgment on Plaintiffs' claims against Chief Diaz (and to the extent alleged, Officer Rucker) is granted.

### E. Claims Against the City of Katy

#### 1. Legal Standards

Plaintiff seeks to impose liability on the City of Katy for the actions of the Officers that Plaintiff alleges violated her constitutional rights. It is well-established that a municipality cannot be held vicariously liable under § 1983 for the conduct of its employees. *Monell v. Dep't of Soc.*

*Servs.*, 436 U.S. 658, 694 (1978); *see Castillanos v. Fairura*, Civil Action No. H-22-CV-1442, 2022 WL 6766160, at *5 (S.D. Tex. Oct. 11, 2022) (citing *Burns v. City of Galveston*, 905 F.2d 100, 102 (5th Cir. 1990)).  In order to establish liability against the City of Katy for alleged excessive force used by officers, Plaintiff must show three things:  (1) a policy maker; (2) an official policy or custom; and (3) that the policy or custom was the "moving force" behind the alleged violation of constitutional rights.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).  The official policy or custom underlying Plaintiff's § 1983 claim must itself be unconstitutional or must have been adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result."  *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009).

The *Monell* standards governing municipal liability also apply to claims for failure to train or supervise officers.  *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).  Therefore, a municipality is liable for a policy or custom of failing to train or supervise employees only where the failure rises to the level of deliberate indifference and directly caused the violation of a plaintiff's constitutional rights.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (stating that a plaintiff asserting a failure to train claim must demonstrate that: (1) training policy procedures were inadequate, (2) city was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused plaintiff's injury); *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (stating that in a § 1983 failure to supervise or train case a plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists

7

between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.").

### 2. Plaintiff has Failed to Create a Material Fact Issue as to the City's Liability.

Plaintiff's Response to the City's Motion for Summary Judgment does not clearly articulate a factual basis for her failure to train and failure to supervise claims. She argues the City has a policy or custom of failing to discipline officers or take remedial action, but she failed to plead that theory, and identifies no evidence of any such policy or custom. ECF 23 at 14. Plaintiff also argues that the City is liable because the officers' training reports (ECF 15-1 at 5-10; 15-2 at 5-9) do not show training in "de-escalation" before the incident. *Id.* at 15. Plaintiff assumes that none of the numerous courses listed on Domer and Garcia's training status reports included de-escalation training and makes the conclusory assertion that this "fact" caused the use of excessive force, a conclusion that lacks any evidentiary support. Plaintiff gives no explanation for and provides no evidence showing how additional training would have changed the Officers' conduct.

The City has presented evidence of General Orders that are in place and govern officers' use of force and standards of conduct. ECF 16-1 at 5-10. It has also presented evidence of its training requirements, which meet or exceed state standards; and has demonstrated that Domer and Garcia each underwent hundreds of hours of training prior to the March 2019 incident. ECF16-2 at 5-9; ECF 16-3 at 4-35. In the face of this evidence, Plaintiff has presented no evidence that creates a genuine issue of material fact as to whether the City of Katy was deliberately indifferent to the risks of constitutional violations by its police officers. The statement in Plaintiff's Response that "the excessive force was the natural and foreseeable consequence of the lack of training on de-escalation, coupled with the knowledge they would not be disciplined after an

8

investigation" (ECF 23 at 15) is speculative and conclusory and fails to create a genuine issue of material fact regarding the City's deliberate indifference to Plaintiff's constitutional rights. *See Echols v. Gardiner*, Civil Action No. CIV.A. H-11-0882, 2013 WL 6243736, at *12 (S.D. Tex. Dec. 3, 2013), aff'd in part, dismissed in part, 593 F. App'x 404 (5th Cir. 2015) (dismissing claims against municipal entities because Plaintiff had no evidence that failure to train or failure to supervise caused plaintiffs' injury). Therefore, Defendants' Motion for Summary Judgment on Plaintiffs' claims against the City of Katy is granted.

### F. Plaintiff's Claims against Officer Garcia and Domer

#### 1. Legal Standards for Qualified Immunity and Excessive Force

The doctrine of qualified immunity is an immunity from suit, not a mere defense to liability, and therefore should be decided at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The qualified immunity inquiry has two prongs: (1) whether the officers' conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). The court may exercise discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Morrow*, 917 F.3d at 874 (The court "can decide one question or both."). A constitutional right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

On summary judgment, the Plaintiff bears the burden to raise a genuine fact issue as to whether the Officers' conduct violated clearly established law. *Crane v. City of Arlington, Texas*, 50 F.4th 453 (5th Cir. 2022). The Court is not bound to accept Plaintiff's version of the facts if contradicted by the video evidence. *Id.*

"The Fourth Amendment protects individuals from being subjected to excessive force when they are physically apprehended or subdued by agents of the government." *Ramirez*, 3 F.4th at 134. A plaintiff asserting an excessive force claim under § 1983 must show she "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). The determination of whether the use of force was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (setting forth what have become known as the "Graham factors"). In addition, Plaintiff's injury must be more than de minimis. *Westfall v. Luna*, 903 F.3d 534, 549 (5th Cir. 2018) (citing cases holding injuries such as abrasions, back and neck pain, and contusions to be de minimis).

### 2. Officers Garcia and Domer are Entitled to Qualified Immunity

Under Fifth Circuit authority Officers Garcia and Domer are clearly entitled to the protection of qualified immunity in this case. First, Plaintiff suffered no more than a de minimis injury. Plaintiff alleges that she bumped her head and suffered scratches to her face, stomach, and legs. ECF 1-1 at 8. The video evidence shows that Plaintiff's shirt and pants got dirty when Domer

dragged her and she tells bystanders "look at my clothes," but the video shows no visible facial scratches after she was restrained and confirms that she refused medical treatment. ECF 15-1 Ex. B; 15-2 Ex. B. Plaintiff confirmed in her answer to Defendants' interrogatories that she did not seek any medical treatment for injuries related to the incident. ECF 15-8 at 2-3. The Fifth Circuit has found injuries more severe than Plaintiff's to be de minimis. *See Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) (noting the Fifth Circuit has found abrasions, back and neck pain, and contusions are de minimis and citing cases); *Westfall*, 903 F.3d at 549-50 (finding injuries including abrasions, bruises, bloody urine, and high blood pressure were de minimis under Fifth Circuit precedent). Because Plaintiff has presented no evidence showing that she suffered more than a de minimis injury as a result of the March 16, 2019 incident, her claims against Officers Garcia and Domer are barred by qualified immunity.

Second, Fifth Circuit precedent establishes that the Officers' actions were objectively reasonable under the circumstances. An "investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Tucker v. City of Shreveport*, 998 F.3d 165, 171 (5th Cir. 2021) (citing *Graham*, 490 U.S. at 396)). "An officer faced with a confrontational suspect properly uses "measured and ascending actions" consistent with the degree of verbal and physical resistance. *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (explaining that the most salient of the *Graham* factors is the amount of the detainee's resistance).

The facts of this case are comparable to those in *Solis v. Serrett*, 31 F.4th 975, 979 (5th Cir. 2022) and other Fifth Circuit cases upholding qualified immunity. In *Solis*, the Fifth Circuit found Officer Serrett entitled to qualified immunity after pulling plaintiff's arm behind her back, forcing her to the ground, and kneeling on her back in order to handcuff her in the course of arresting her

11

for public intoxication where plaintiff did nothing more than attempt to record the officer's interaction with her boyfriend, ask for the officer's badge number, and refuse to give him her cell phone. *Id.* Solis's essentially de minimis injuries weighed strongly in favor of qualified immunity. *Id.* at 983. Also, in *Solis* "the use of force demonstrated on the video evidence was relatively limited, involving only the officers' restraint of Solis's arms, a brief takedown, the force necessary to restrict her while she was handcuffed, and she was promptly brought to her feet." *Id.* Similarly, in *Craig v. Martin*, 49 F.4th 404, 410-11 (5th Cir. 2022), the court held that it was not objectively unreasonable for an officer to grab Craig and push her to the ground before handcuffing her, where Craig was visibly agitated and shouted at the officer, the scene was chaotic, and Craig's daughter pushed the officer. In *Betts*, the Fifth Circuit reversed the district court's denial of qualified immunity, which was based on the district court's assessment of plaintiff's resistance as "passive," because video evidence showed that plaintiff took a confrontational stance, repeatedly contested the reason for the stop, ignored commands, accused the officer of lying, batted away the officer's hand, and disputed the officer's authority to order him to stand behind his truck. 22 F.4th at 583. The *Betts* Court explained that "faced with an angry driver," the officer reasonably wanted to get the driver away from the driver's compartment where a weapon might easily be hidden. *Id.* The facts here are similar to the facts in the above cases because the evidence shows that Plaintiff was belligerent, shouted and cursed at the officers, initially lied about her presence at the restaurant, and refused to obey commands to stop yelling. ECF 15-1, Ex. B.

Prior to being moved by Garcia and Domer, Plaintiff was within arms reach of the interior of a vehicle in which a weapon could have been located. In addition, an individual was sitting in the vehicle who could have been armed or operated the car. Officer Garcia did not immediately

resort to force but first repeatedly asked Plaintiff to calm down so he could talk to her. This court will not second-guess with the benefit of hindsight whether the officers could have managed to secure the area and question Plaintiff without forcefully pulling her from between the vehicles and handcuffing her. *Tucker*, 998 F.3d at 176; *Solis*, 31 F.4th at 983. Qualified Immunity protects police officers even when they act negligently or could have used another method to subdue a suspect. *Mason v. Faul*, 929 F.3d 762, 763 (5th Cir. 2019).

The Court finds it was objectively reasonable for Officer Garcia to use relatively mild force to detain Plaintiff in order to conduct an investigation of the disturbance at the restaurant. Plaintiff was belligerent, uncooperative, yelling, and cursing. Further, it was objectively reasonable for Officer Domer to assist Garcia after Plaintiff fell in order to get Plaintiff into an open area away from the two cars. While passive, verbal resistance generally does not authorize the use of violent force by an officer, *see Tucker*, 998 F.3d at 175, the force used against Plaintiff by Garcia and Domer, which involved only open hand contact, was not as violent as that used by officers in the cases cited above, such as *Betts*, in which the Fifth Circuit found that officers who had used a taser to subdue someone were entitled to qualified immunity. Significantly, Plaintiff has not cited a single case in which the Fifth Circuit denied qualified immunity under comparable facts. *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) (holding that a plaintiff cannot overcome qualified immunity "without identifying a case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment, and without explaining why the case clearly proscribed the conduct of that individual officer").

In sum, Plaintiff has not met her summary judgment burden to show that Officers Garcia and Domer used excessive force in violation of the Fourth Amendment, much less that their actions

were in violation of clearly established Fourth Amendment precedents. Therefore, the Officers are entitled to qualified immunity from Plaintiff's lawsuit.

### IV.     Conclusion and Order

For the reasons discussed above, it is ORDERED that Defendants' Motions for Summary Judgment (ECF 15, 16) are GRANTED and this case is DISMISSED in its entirety with prejudice.

Signed on January 13, 2023, at Houston, Texas.

*Christina A. Bryan*
Christina A. Bryan
United States Magistrate Judge